The Court of Appeals, we have one case to be submitted this afternoon, United States v. Comeaux, and we'll hear from Mr. Talbott. Good afternoon. May it please the Court. I'm Dustin Talbott, and I represent the appellant Brennan Comeaux, who is serving a 24-month prison sentence and has lost the ability to possess firearms for the rest of his life because he built five homemade suppressor devices in his rural Louisiana residence. When Mr. Comeaux possessed and created these homemade suppressor devices, he was 48 years old and was not a prohibited person under any federal or Louisiana law. He was not a felon. In fact, his only prior arrest was for a misdemeanor DWI many years ago. There were no restraining and protective orders against him, and there had been no judicial finding that he was dangerous. And perhaps most important for the discussion today, he was not engaged in the business or commerce of firearms. He manufactured personal suppressor devices in his home using his own tools and equipment, and he kept those for his self-defense at his residence, and that's where they were seized by the federal government. But wasn't he selling one to someone, the undercover agent? No, Your Honor. Mr. Comeaux did not sell or tried to sell any of his suppressors or devices to an undercover agent. Well, how did it get discovered? It got discovered because they went to his house to execute a search warrant because of a property dispute and a neighbor dispute with his neighbors where he had fired a warning shot when they were trespassing on his property, and so that's what brought the police officers to his home. When they searched the interior of his residence, they found his extensive firearm collection with antique and modern firearms and also tools to do a different sort of blacksmithing, and also he had created five homemade suppressor devices. Mr. Comeaux's case walks through the door that Peterson left open. In Peterson, this court in a published decision held that the NFA's silencer registration regime is a shall-issue licensing regime, and under this court's decision in McRory, it held that that is presumptively constitutional under Bruin's footnote 9. And so Mr. Comeaux necessarily has to convince this panel to distinguish Peterson, and I think there's two alternative ways that the court should distinguish Peterson. The first is that, you know, Peterson and McRory and all of the regulations in Bruin footnote 9 all involve either the commerce of firearms or they involve the public carry of firearms in society. None of them cover the conduct we're talking about here, which is the purely in-home manufacturing possession of a firearm for personal use. That's the first distinction I'll talk about. And the second distinction is even if this court applies the presumption of constitutionality from Peterson, Mr. Comeaux can show that it was put to abusive ends in this case, and that is by nature of what happened and how the government enforced the regulation against Mr. Comeaux. He's in prison. He's lost the right to possess a firearm for the rest of his life, and there's no historical basis to support that sort of enforcement of this sort of regulation. So I'll move to the first way that the court in this panel can distinguish Peterson, and that is that this case does not involve any commercial firearms dealings. It's not in the commercial space at all. And if you look at footnote 9 of Bruin, and that's the basis for Judge Smith, your decision in McRory and the Peterson decision, footnote 9 of Bruin says that the wide amount of state shall issue licensing regimes are presumptively constitutional. And the regimes that it talks about, these regulations, they govern bearing arms in public. These are concealed carry permit licensing regimes. These are open carry licensing regimes. So the presumptive constitutionality involves people bearing arms in public. That doesn't apply here. Mr. Comeaux never brought his silencers outside of his residence. And also if you look at this court's decision in McRory and Peterson, that involved commerce, that involved the commerce portion of regulation, right? McRory involved background checks when someone goes to a federal firearms licensee and tries to purchase a firearm in commerce, and Peterson himself was an FFL, right? He held a federal firearms license, and he was in the business of selling firearms from his residence, and that's where he had the suppressor. And so if you look at why we give a presumption of constitutionality to shall issue licensing regimes, none of them involve the federal government going into a private residence and regulating a private gunsmith building weapons on his own that he's going to keep in his home for self-defense. What Mr. Comeaux did in this case is the core of what Heller said is protected by the Second Amendment. In-home self-defense use of a firearm, and that's what Mr. Comeaux did. To go back to your question, Judge Clement, Mr. Comeaux never brought the silencers or the suppressors outside of his home. He never even used them. The warning shot he fired at the neighbor did not involve a gun with a suppressor. And if you look at the facts of this case, there was a dispute with his neighbor, and he said his neighbors kept trespassing on his property, vandalizing his cars, sabotaging his equipment. And one of the ways the neighbors kept calling police is they complained that he routinely fired his firearms on his private property. I guess he wasn't using his silencers. Well, that's exactly where I'm going, Judge Clement. Now we know why he was trying to develop his own case. And so if we look at why there's this presumption of constitutionality under the shall issue licensing regimes, none of those things, footnote 9, McCrory, Peterson, involved the pure in-home creation and possession of an arm. And so that's a way to distinguish Peterson. And so what happens if there's no presumption of constitutionality? This court gets to proceed to Bruin Step 2, which is the historical, you know, can the government show a historical basis for regulating the conduct in this case? And I think that's an easy no. There is no historical basis for regulating in-home gunsmithing. In fact, as we talk about in our supplemental briefing, there's a pretty rich founding-era tradition of promoting that sort of conduct. We wanted people to be gunsmiths at the founding. We wanted members of the militia to be able to create and develop and maintain their own firearms. And so there is no historical regulation as applied to Mr. Como's case of regulating the pure in-home possession and creation of a silencer. The second way that this court could distinguish Peterson, which is an alternative way, is if this court were to say the shall issue presumption of constitutionality applies to Mr. Como. Mr. Como can show that as applied to this case, it has been put to abusive means, right? And that's the language from Bruin footnote 9. And the way he shows that is what happened to Mr. Como in this case, right? He's not a prohibited person, right? So if we take the shall issue licensing regime at face value, if he would have just filled out some paperwork and paid $200, he'd have been approved to have these homemade suppressors. And so that offense, right, that paperwork regulatory offense, what happened? How did the government enforce that? They arrested him. They sent him to prison. He's lost his home. He's lost his firearm collection. And when he gets out of prison, he can never have a firearm again for the rest of his life. He's totally dispossessed. No more Second Amendment rights. And so that is abusive means, right? There is no historical basis that the government has pointed to, either founding error or even, you know, 14th Amendment error, that shows that someone who failed to fill out paperwork or failed to pay a tax was subject to lifetime disarmament. But that is the actual consequence of enforcing this registration requirement on Mr. Como. And so those are two alternative ways. Where are we on the question of whether a silencer is, in fact, an arm? So I would tell you, Judge, that both parties agree in this case that silencers deserve Second Amendment protection, right? I know when we briefed this case, that was a disputed issue among the parties. But after the briefing in this case, the government has joined the defense in arguing that suppressors are entitled to Second Amendment protection. In Peterson, this court assumed without deciding that suppressors are entitled to Second Amendment protection. The Fourth Circuit recently did the same thing in Speed and said that, you know, they assumed without deciding that silencers are armed within the Second Amendment. But, Judge, you know, to the extent that you have to find that and you will to rule for Mr. Como, you know, the brief is pretty extensive in setting forth why suppressors themselves are armed under the Second Amendment, right? Because of, you know, the utility and the historical basis for providing Second Amendment protection to things that are accoutrements and things that are necessary to effective and safe use of firearms. But also the court could say that they're entitled to Second Amendment protection as, like, a necessary corollary to exercising the Second Amendment right. And we cited to some other circuit cases that applied that in different contexts. Like one case said that a city cannot ban shooting ranges because, you know, being able to go and cite your guns and practice your firearm proficiency is a necessary corollary to exercising your Second Amendment. It's the same for a magazine, right? And, of course, you know, one of the counterarguments here is, like, well, can't you still shoot a gun if you take the suppressor off, right? Well, you can still shoot a gun if you take a magazine out, right? You can either shoot one gun, one bullet that's still in the chamber or you could have a revolver with no magazine. And so, you know, I think that, you know, the government's on the right side of this now in agreeing that, you know, things like silencers that have tremendous safety benefits, tremendous Second Amendment self-defense benefits that, you know, I won't belabor it, but we lay all this out in the opening briefing about why silencers and suppressors are not dangerous or unusual weapons now. They're pretty ubiquitous. And so, but Judge Smith, to answer your question, yes, I think you, this panel would have to decide that arms are, that suppressors are arms under the Second Amendment in order to rule for Mr. Como, but both parties agree with that position now. I'll reserve the rest of my time. Thank you. Yes, thank you. You've saved time for rebuttal. Mr. Glazer. May it please the Court, William Glaser of the United States. The National Firearms Act prohibition on possession of unregistered silencers is constitutional under the Second Amendment. I would like to, first of all, though, note that as we explained in our brief, Mr. Como did not preserve his as-applied challenge below. He really made what was in effect a facial challenge. I think Peterson can just easily dispose of any facial challenge. And with respect to his as-applied challenge, he raises a variety of arguments on appeal saying that, you know, this involved non-commercial possession, et cetera. Those were not arguments that he made below. And as this Court recently noted in the Wilson case involving machine guns, when you make, when you simply gesture at an as-applied challenge, but all of your arguments really are directed at the facial validity of the statute, you have not preserved an as-applied challenge. So I'd just like to flag that, that we think plain error is the appropriate standard of review for his as-applied challenge. But regardless of whether it's preserved, his claim fails under Peterson for a few reasons. First of all, it's true that Peterson was decided on the basis that the defendant there hadn't raised all of the claims that he might have raised. But I think that Peterson does stand for a couple of really clear propositions. The first is that the NFA's registration scheme is a shall-issue scheme that doesn't involve inappropriate discretion for decision-makers. Essentially, you can get a silencer as long as you pay the tax, which as of January 1st of this year is $0. At the time, it was $200. You pay the tax and you pass a background check. You are authorized to possess firearms under state and federal law. That is a classic shall-issue regime. The other thing that Peterson stands for is that you have to show some sort of abusive ends, such as, for example, exorbitant fees or an extraordinary wait time, in order to show that a shall-issue regime is unconstitutional. So I think that's clear from Peterson. Now, Peterson did say this particular defendant hasn't shown any abusive ends. Maybe some could in a future case. And so I think that's really the nub of this case, is whether, assuming it's preserved, whether Mr. Como can show that the NFA is unconstitutional as applied to him because he's somehow different from Mr. Peterson. So he points to two things. First of all, he points to the fact that Mr. Peterson was an FFL who was engaged in the commercial sale of firearms. However, if you look at the Peterson decision, this court noted there that Mr. Peterson was actually charged with making silencers, apparently for his own personal use. So that distinction sort of falls away. Additionally, even in the argument today, I haven't heard anything from Mr. Como about exorbitant wait times or extraordinary fees. He doesn't say that the $200 tax was somehow too much for him to pay. In fact, he suggests that this was a mere paperwork kind of crime, that he could have paid the fee, he could have gotten the registration as he was required to under the NFA, and for each of the silencers, Your Honor. So five silencers, $1,000. But, you know, that's if you take it, I think, one at a time, it's hard to say that that is an unconstitutional or prohibitive tax. It might have been at some point in the past, but it's not today, and certainly coming forward, it's not, because the tax has been reduced to zero. But he... $200 will barely buy a tank of gas. That's true, Judge Smith. And I would also mention it would barely buy a silencer. So most silencers, perhaps he was making his own on the cheap, but if you're going to buy a commercially made silencer, it's going to cost north of $200 anyway. So his second distinction that he points to is he claims that the scheme here was put to abusive ends here because he was prosecuted and permanently deprived of his firearm rights based on this failure to file the appropriate paperwork. But that's not a distinction from Peterson. That's exactly what happened in Peterson. So Peterson, like Mr. Como, was not a prohibited person. Peterson happened to be an FFL, so of course he could possess firearms. And the government in Peterson prosecuted that FFL for his making of unregistered silencers and gave him a felony that now permanently prohibits him from possessing firearms, at least statutorily. And that is no different than Mr. Como. So the two distinctions that he attempts to draw between this case and Peterson simply fall away. So for those reasons, we think the court should uphold the statute's application to him, and certainly I think Peterson resolves it on his face. I would, if I may, just like to briefly address the question of whether suppressors or silencers are protected by the Second Amendment. It's true, as my friend on the other side notes, that the parties have come essentially to agreement here, but I would draw a little bit of a distinction between our positions. So it is not the United States' position that silencers are, in fact, themselves standalone arms. Rather, it's our position that they are protected by the Second Amendment because they are useful firearm accessories. This court doesn't need to actually resolve that, but can do exactly what Peterson did and exactly what the Fourth Circuit did in Speed and assume it. That's what the district court did, I would note, as well, in this case, in footnote one. But that slight distinction aside, I think both parties agree that you at least have to go through some sort of a Second Amendment analysis. Peterson lays forth the Second Amendment analysis that the court should apply, and under Peterson, the statute is constitutional. If the court has no further questions, we'd ask the court to affirm. Thank you, Mr. Blanchard. Mr. Talbot for rebuttal. Thank you, Judge, and I just have two brief points to make. I know it's late in the afternoon. In the record at page 31 is where Mr. Cuomo preserved the as-applied challenge. He both raises this as an as-applied, and then he provides the facts that I talked about today, that it's unconstitutional as applied to going into a private gun collector and manufacturer's home and regulating that conduct that doesn't affect commerce in any way. That's the record at page 31. The second thing I want to respond to is the distinction with Peterson, the previous case of this court, making his own suppressor. The opinion in Peterson says that Mr. Peterson bought a kit, so he purchased a kit in commerce and then used that kit to assemble, I guess, the suppressor at issue in that case. That's not what Mr. Cuomo did. He designed the suppressor based on the metal and equipment that he had. He gunsmithed it himself, not through a kit that affected commerce, and so I just wanted to point out that distinction. I'll close with this. This is a case where the federal government went into the home of a gun collector and a Second Amendment enthusiast and went through and made a catalog of all of his firearms and found a few that he didn't get permission before he created them. He's now in prison and has lost everything. This is the core of what Heller talks about when he talks about the ability to possess a gun in your own home for self-defense, and this court should find that it is unconstitutional in those limited circumstances. When someone is a gunsmith in their own home, they create a weapon in their own home, and they possess it in their own home for self-defense purposes, and that item is never transferred to someone else. It's never sold. It wasn't designed or built for any sort of commerce reason. It's purely self-defense and personal. The court should say that the NFA registration requirement for silencers is unconstitutional as applied to that circumstance. Thank you, Mr. Taube. Your case is under submission, and the court is in recess.